## Constable's Estate.

Argued March 24, 1931.   Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*P. V. Gifford,* with him *R. L. Roberts,* for appellant.—
The value of the life estate of Herbert Constable in the
$8,000 of stock bequeathed to him by decedent should
have been determined as of the date of the death of de-
cedent, and the inheritance tax thereon calculated ac-
cordingly: Baird's Est., 299 Pa. 39.

The court erred in refusing to allow the executor to
place in the record of the proceedings the receipt and re-
lease of Raymond Sanderson.

The court erred in charging only the sum of $44 to
Herbert Constable, as the tax on his life estate in the
$8,000 of stock bequeathed to him by the decedent.

*Frank A. Bliley,* for appellees.—The direction of the
statute to assess and fix the cash value of the life estate
is not only imperative but it is essential: Burkhart's
Est., 25 Pa. Superior Ct. 514; Montgomery's Est., 63
Pa. Superior Ct. 318; Sock's Est., 9 Pa. Dist. R. 101;
Nimlet's Est., 299 Pa. 359.

When an executor, who is also trustee, files his ac-
count, affirms to its correctness, petitions for distribu-
tion, certifies to the amount claimed by him as trustee,
offers no testimony, suggests no irregularities, and,
openly as executor and tacitly as trustee, advocates a
scheme of distribution which is followed, he is estopped
from alleging that the court committed error: Hein-
itsh's Est., 22 Lanc. L. R. 27; Witmer's Est., 23 Lanc.
L. R. 51; Constable's Est., 299 Pa. 509; Hertzler's Est.,
192 Pa. 531.

OPINION BY MR. JUSTICE SCHAFFER, May 11, 1931:

When the proceeding at bar was here before (299 Pa.
509) we thus commented upon it: "This is one of the
most confusing records which it has been our duty to
review for sometime." As was then pointed out, the
situation in which the executor found himself was in
large measure due to his unwarranted delay in account-
ing; so it may be said is his predicament on this his

third appeal. We shall not review the facts. They were sufficiently stated in our former opinion to make understandable our rulings in this one. The confusing state of the record, then adverted to, persists in the supplements to it, which further proceedings have brought about. The sixteen pages of appellant's history of the case do not even slightly dispel all the involvements of the many hearings, opinions, rules and orders made. We have the statement of the court below that the adjudication of the estate has consumed more time and attention than any case that has ever come before it. The record would not lead us to conclude otherwise.

One of the sixty-one surcharges to which the court subjected appellant grew out of his having paid the whole collateral inheritance tax on bequest of $8,000 par value of the capital stock of a corporation which was given to Herbert Constable for life with remainder to three nephews of the decedent. We determined that this surcharge, amounting to $620.22, was wrong as to so much as represented the tax on the life estate, and said that on final distribution the residuary share of the life tenant of the stock (he being a residuary legatee) could be charged with its proper proportion of the tax and any interest which the estate lost by its payment, and that the executor should be held for the tax on the remainder. We directed: "The court can equitably adjust the tax and interest between the estates [for life and in remainder] in its final decree of distribution." Following this instruction the court did not assess against the life tenant the full tax on the life interest as it was separately appraised but only a portion thereof, giving as its reasons for this disposition of the matter that the evidence relating to the stock transaction was confusing, which it seems to be, and that although the life use of the stock was awarded to the life tenant in the decree of distribution entered March 10, 1928, he has never had possession of it, but the executor has retained it and it has greatly depreciated in value, the

court further saying that it is doubtful whether it could now be sold for enough to pay the tax. In view of the long delay by the accountant and the decrease in value of the stock, it was concluded that equitably the life tenant should only be charged with $44 of the tax and not with $276.43, as appellant claims he ought to be, and that the surcharge should stand against the accountant for the remainder. We have not been convinced that this determination was inequitable.

A second complaint of appellant relates to the effect to be given to a release obtained by him from one of the four residuary legatees. Appellant's counsel states the question involved to be: Where one of four residuary legatees has settled with the executor and executed a release to him, and *afterwards* the other three residuary legatees filed exceptions to the account of the executor, and certain surcharges are made against the executor, should the surcharges be restricted to the other fractional interests? The court determined they should not be, one of the reasons given being that the release was obtained *after* the surcharge proceedings were commenced, and was offered to the court, not before but after the surcharges were made. As to this release, we said in our former opinion: "Complaint is made that appellant was not permitted to make proof of a receipt and release by Raymond Sanderson, one of the residuary legatees, it being contended that, had it been received, it would have affected the awards to the residuary legatees under the rule laid down in Hertzler's Est., 192 Pa. 531, that, where a legatee entitled to a fractional share in a residue releases his interest to the executor and the executor is surcharged, the surcharge should be of the other fractional interests only. While there may have been some tardiness in bringing forward this release, as the case must go back for further proceedings and for another decree of distribution, we order that the court below shall consider and give effect to the release in finally disposing of the matters before it." Counsel for

appellant says in his brief that the court did not, as he understands the matter, give effect to the release in accordance with the rule laid down in Hertzler's Estate. As part of his argument, he submits a very complicated restatement of a schedule of distribution. The court in its opinion disposing of the exceptions says that the release was given effect, but further states that while it was in the possession of the accountant, it was not introduced in evidence before the adjudication and decree of distribution was filed and adds this observation, "Sanderson has settled with the executor and releases any claim to this award; it therefore goes to the credit of the executor, it is his if he elects to keep it. Sanderson can dispose of his money as he chooses." As we understand it, this means that in effect the executor has obtained Sanderson's share, this being so, there was no occasion to recast the decree, particularly as the executor did not produce the release until after it was entered. In result, as we construe the circumstances in connection with the transaction, the executor had bought Sanderson's share of the residuary estate, which apparently amounted to $3,062.35 for $1,610.49. We see no reason why he should profit further at the expense of the other residuary legatees, particularly is this so when his conduct toward them is considered; his failure to account for the many years; that they had to cite him to do so; and the expense and trouble of litigation to which he has put them.

We see no occasion to disturb the court's direction as to the costs.

The decree of the court below is affirmed at appellant's cost.